IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| Sylvester McClain, et al. | § | Civil Action No. 9:97 CV 063 (CLARK) |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| Lufkin Industries, Inc. | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' SECOND MOTION TO QUASH, AND MOTION FOR LEAVE TO CONDUCT AND COMPEL DISCOVERY LIMITED TO THE ISSUE OF DEFENDANT'S ATTORNEYS' FEES**

32537-8

TO THE HONORABLE COURT:

Plaintiffs file this Response in Opposition to Defendant's Second Motion to Quash, etc. (Dkt. 590), and affirmatively move the Court for leave to conduct and to compel discovery limited to the issue of Defendant's Attorneys' Fees.

## I.    INTRODUCTION

This is a very complicated and protracted race discrimination class action, now here on remand from the Fifth Circuit, in which the prevailing Plaintiffs' counsel are scheduled to submit a supplemental motion for costs and attorneys' fees by January 20, 2009.  Plaintiffs have the burden to substantiate the fees sought and to provide the Court with information relevant to its determination of the issue; indeed, in vacating the District Court's prior order awarding costs and fees in an amount substantially less than Plaintiffs sought, the Fifth Circuit held that the Court must specifically address and make findings on the Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974) factors relevant to determination of the appropriate lodestar amounts and possible adjustments thereto.  McClain v. Lufkin Industries, Inc., 519 F.3d 264, 284 (2008), cert. denied 129 S.Ct. 198 (2008).  Key among those factors are the number of compensable hours reasonably spent on the litigation, and the appropriate hourly rates for counsel's services.  Heidtman v. County of El Paso, 171 F.3d 1038, 1043 (5th Cir. 1999).  In addressing their evidentiary burden on these issues, Plaintiffs now seek narrowly limited discovery that, regardless of whether it was relevant or necessary before the Fifth Circuit's decision, is now plainly relevant; Plaintiffs have kept their discovery to the necessary minimum and have no interest in unnecessarily prolonging the fees application process or in wasting their, or the Court's, time.

Because this litigation is relatively unique in this jurisdiction at this time, comparative information from similar litigation (recently litigated employment discrimination class actions in the Eastern District of Texas) about rates, attorney time and expenses pertinent to the fee issues is scarce or non-existent.  The information Plaintiffs seek about Defendant Lufkin's fees should therefore be of particular interest to the Court.  Also, information about Lufkin's counsel's own

fees and billing practices will provide highly relevant evidence by which the Court may assess the objections to Plaintiffs' counsel's hours and rates that Defendant will no doubt file.

## II.     BACKGROUND AND PERTINENT FACTS

At a hearing on December 5, 2008 the Court directed Plaintiffs to submit a supplemental petition for costs and fees within 45 days – by any standard an expedited schedule that required Plaintiffs to focus immediately on what evidence they need to discover and present to the Court. Because the Fifth Circuit vacated Judge Cobb's award for the period through trial, however, Plaintiffs' application must address, and this Court must determine, the appropriate amount of attorneys' fees and costs for the entire litigation, not just the period since trial.

On the same day and after carefully considering the outcome of the hearing, Plaintiffs issued a deposition notice and document request (which requires 30 days' notice to be effective) to obtain Defendant's fee information in time to prepare the supplemental fee petition.  In their cover letter to defense counsel accompanying the notice, Plaintiffs expressed flexibility with regard to rescheduling and invited Lufkin to call to discuss any related issues.  Defendant waited until December 18, 2008 to inform Plaintiffs of its opposition to the discovery, along with its refusal to appear at the deposition.

Mindful of the Court's August 18, 2008 Order curtailing discovery and the Court's emphasis on efficiency and cooperation, on December 19, 2008 Plaintiffs advised Lufkin  of their intent to seek guidance from the Court regarding the proposed discovery, providing Lufkin with a draft of Plaintiffs' letter to the Court (which was subsequently sent on December 23, 2008).  Lufkin responded by filing its formal Motion to Quash (Dkt. 590), which Plaintiffs now oppose.

On February 28, 2005 Judge Cobb granted a motion by Lufkin to quash Plaintiffs' earlier request for documents reflecting Lufkin's fees (Dkt. 490).  Plaintiffs respectfully submit that Judge Cobb erroneously granted Lufkin's motion at that time without hearing Plaintiffs'

response and before knowing what objections or arguments Lufkin would make regarding the fees issue.[1] However, this Court need not review or reverse Judge Cobb's ruling, which was based on different facts at a different stage in the litigation, and in particular did not have the benefit of the Fifth Circuit's subsequent ruling highlighting the importance of specific findings as to, inter alia, reasonable hourly rates in the relevant market.

On March 10, 2005 Plaintiffs filed their initial Motion for an interim fee (Dkt. 499). On May 5, 2005 Lufkin filed its Response (Dkt. 528) to the Plaintiffs' initial fee motion. Defendant's Response raised objections to virtually every aspect of Plaintiffs' application: Plaintiffs' attorneys' rates, hours billed, attorney assignments/tasks, billing judgment, record keeping, and expenses. The Court can reasonably expect Defendant to raise the same barrage of objections to their renewed and supplemental fee application. Defendant's anticipated objections underscore the relevance and appropriateness of discovery regarding *some* of its own counsel's practices, and Lufkin's willingness to pay for them, on the same matters it has previously raised, and will again raise, in its objections to Plaintiffs' requests.

### III.    ARGUMENT

### A.    The Discovery Sought Is Relevant And Limited

Discovery under Rule 26 is "to be applied as broadly and liberally as possible," and factual matters relevant to the issues in a case are ordinarily discoverable unless privileged. Hickman v. Taylor, 329 U.S. 495, 506 (1947); see also Dollar v. Long Mfg., N.C., Inc., 561 F.2d 613, 616 (5th Cir. 1977). Relevant information encompasses "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Merrill v. Waffle House, Inc., 227 F.R.D. 467, 470 (N.D. Tex. 2005) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)). "Relevancy is to be broadly construed, and a request for discovery should be considered relevant if there is 'any possibility' that the

---

[1] The Fifth Circuit reversed Judge Cobb's fee determination and remanded it to this Court for proper analysis and award.

information sought may be relevant to the claim or defense of any party." Merrill, 227 F.R.D. at 470 (quoting Sheldon v. Vermonty, 204 F.R.D. 679, 689 (D. Kan. 2001)). "When the discovery sought appears relevant, the party *resisting* the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery either does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1) or is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." Merrill, 227 F.R.D. at 470-71 (quoting Scott v. Leavenworth Unified Sch. Dist. No. 453, 190 F.R.D. 583, 585 (D. Kan. 1999)) (emphasis added). In keeping with this policy favoring discovery of relevant matters, the Court should exercise its broad discretion in managing the litigation by permitting the limited discovery sought, which is tailored to the pending fee issue and is related to the objections Lufkin has raised. For these reasons Plaintiffs seek leave to conduct the limited discovery sought and an order compelling Defendant to provide that discovery.

Numerous other courts have found a non-prevailing party's fees to be relevant in determining whether the fees claimed by the prevailing party are reasonable. *See* U.S. Golf Corp. v. Eufaula Bank & Trust Co., 639 F.2d 1197 (5th Cir. 1981) (affirming the relevance of opposing counsel's fees as one factor among several that informed the court's determination of the customary fees of attorneys who work in Eufala, Alabama); In re Fine Paper Antitrust Litigation, 751 F.2d 562, 587 (3d Cir. 1984) (finding that information about fees paid to defendants' counsel in antitrust litigation "certainly was relevant, and arguably even helpful" for the purpose of determining "hourly rates for comparable lawyers in complex litigation"); Murray v. Stuckey's Inc., 153 F.R.D. 151, 153 (N.D. Iowa 1993) ("The court concludes that . . . defendants' attorneys . . . hourly rates, to the extent that those rates reflect 'the prevailing market rates in the relevant community,' are relevant to plaintiffs' attorney fee claim."); cf. Naismith v. Professional Golfers Ass'n, 85 F.R.D. 552, 564 (N.D. Ga. 1979) ("[T]he Court believes that the extent to which defendants may have obtained high-priced legal counsel is relevant to show the reasonableness of plaintiffs in hiring high-priced counsel.").

In the circumstances of this case, where there is a dearth of recent comparable civil rights class action litigation in the Eastern District of Texas, evidence of Defendant's counsel's fee practices resulting from market forces will be particularly helpful to the Court. The deposition sought need not take long (assuming the witness is properly prepared), should not require any more of the Court's time, will tend to discourage manufactured or otherwise unnecessary issues, and may contribute to the Court's determination regarding fees. Indeed, Lufkin's resistance has already consumed more resources, from both the parties and the Court, than would its cooperation. Mutuality also favors this discovery: when Lufkin requested to take the deposition of Plaintiffs' lead trial counsel, Timothy Garrigan, during the 2005 fees proceedings – arguably a more intrusive discovery request than Plaintiffs', directed at a party itself – Plaintiffs agreed and Mr. Garrigan testified. What's good for the goose should be good for the gander.

For these reasons Plaintiffs respectfully request leave to conduct the limited discovery sought and an order directing Lufkin to cooperate and provide that information.

**B.** **There Are No Valid Legal or Practical Reasons to Deny Plaintiffs The Discovery They Seek.**

Lufkin's Motion (Dkt. 590) does not raise any privilege, argue any undue burden, or suggest an alternative source of the relevant information sought by Plaintiffs, to support its resistance to the discovery. Lufkin's argument is based entirely on case law taken out of context. While some cases have concluded that an unsuccessful opponent's fee practices were not determinative in the context of that case, those same cases suggest that the opponent's fee practices warranted examination to determine whether they were relevant.

For instance, Harkless v. Sweeny ISD, 608 F.2d 594 (5th Cir. 1999), does not suggest that opposing counsel's time has no bearing on a fee petition, only that in that case the unsuccessful defense counsel's lesser amount of time was not a sufficient reason to reduce the successful plaintiff's fee award. *Id.* at 598. If anything, Harkless indicates that discovery of the defendant's fees is appropriate, as the parties and the court in that case explicitly considered the

unsuccessful defendant's fee information, though, under the particular circumstances, concluded it was non-determinative.

Similarly, in Mirabal v. GMAC Corp., 576 F.2d 729, 731 (7th Cir. 1978), the unsuccessful defendant's fees were considered, and apparently subject to discovery, but not determinative in the contest of that case. Brooks v. Georgia St. Bd. of Elections, 997 F.2d 857, 869 (11th Cir. 1993), also cited by Lufkin and similar to Harkless, found that under the particular circumstances of that case, the lower fees charged to an unsuccessful government defendant by virtue of its governmental status were not an appropriate reason to reduce a successful plaintiff's fee award. The court in Brooks actually considered evidence of the rates and billing practices of the attorney representing the unsuccessful defendant. Id. at 870. Brooks, therefore, suggests that discovery of an unsuccessful opponent's fees is within a court's discretion. Id.

As Lufkin concedes, the Fifth Circuit has approved of consideration of an opponent's fees in awarding fees to a successful litigant. U.S. Golf Corp. v. Eufala Bank & Trust, supra, 639 F.2d at 1203. As in that case, and almost by definition, an opposing counsel's non-contingent fees and billing practices in a given case should provide a floor, or at least some evidence, of the relevant market rates for attorneys' fees.

Finally, Lufkin's argument stresses that it is the Plaintiffs' burden to provide the Court with evidence relevant to the fee determination, citing Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984). Ironically, footnote 11, referred to by Lufkin, recognizes the fee petitioner's inherent difficulty in establishing appropriate market rates and indicates the relevance afforded by non-contingent privately negotiated fees in the community—precisely the information sought to be discovered. Given the burden on the Plaintiffs, Blum suggests the discovery sought here is appropriate.

Although Defendant argues that the billing rates of its Houston, Texas attorneys are not relevant to the rates that should be applied to this Lufkin, Texas venued (and Beuamont, Texas tried) action, reasonable fees are to be calculated not necessarily based on the rate within the particular venue, but rather based on "those prevailing in the community for similar services by

lawyers of reasonably comparable skill, experience and reputation."  <u>Blum</u>, 465 U.S. at 896 n.11; <u>LULAC v. Roscoe Independent Sch. Dist.</u>, 119 F.3d 1228, 1234 (5th Cir. 1997).  What constitutes the relevant "community" in the unusual circumstances of this case will, no doubt, be disputed by the parties.  Plaintiffs submit, as they did in their 2005 application, that, in this case, it was reasonable and necessary to enlist out-of-venue attorneys and to compensate  them at higher rates because the litigation required expertise and resources that attorneys within the forum generally do not possess.  <u>Arbor Hill Concerned Citizens Neighborhood Assoc. v. County of Albany & Albany County Board of Elections</u>, 522 F.3d 182, 191-92 (2d Cir. 2008) (holding that "a district court may use an out-of-district rate sought . . . in calculating the presumptively reasonable fee if it is clear that a reasonable, paying client would have paid those higher rates" because "legal markets may be defined by practice area."); <u>Mathur v. Bd. Of Trs. Of S. Ill. Univ.</u>, 317 F.3d 738, 743-44 (7th Cir. 2003) (applying a higher rate than that of the forum due to litigant's inability to find qualified local counsel); <u>Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc.</u>, 50 F.3d 253, 260 (3d Cir. 1995) ("The idea that a firm should be restricted to the hourly rate typical in the locale of the case is unduly parochial particularly in this age of national and regional law firms working on larger more complex bankruptcy cases of more than local import.") (internal quotation marks and citation omitted).

As Lufkin itself has demonstrated by retaining and paying one of the largest and highest-billing firms in the State of Texas, this is a case where "a reasonable, paying client would have paid those [out of venue] rates," <u>Arbor Hill</u>, <u>supra</u>.  Therefore, Plaintiffs will argue that Defendant's counsel's rates and billing practices are highly relevant to plaintiffs' attorneys' fees in this case, and the Court should at least consider those rates and billing practices – particularly because Defendant paid them and deemed them appropriate for litigating this case.  And, since it is relevant for the Court to consider these facts in determining an award, Plaintiffs are entitled to take discovery to obtain those relevant facts.

# IV.     CONCLUSION

For the reasons described, Plaintiffs respectfully request that the Court permit, and compel, the deposition of Defendant Lufkin regarding its attorneys' fees and costs paid in this matter.

Dated:  December 30, 2008                    Respectfully submitted,


By:     /S/ Teresa Demchak

Teresa Demchak, CA Bar No. 123989
tdemchak@gdblegal.com
Morris J. Baller, CA Bar No. 048928
mballer@gdblegal.com
Goldstein, Demchak, Baller, Borgen & Dardarian
300 Lakeside Drive, Suite 1000
Oakland, CA  94612-3534
(510) 763-9800

Timothy Garrigan, TX Bar No. 07703600
tim@sgclaw.org
Stuckey, Garrigan & Castetter Law Offices
2803 North Street
Nacogdoches, TX  75963-1902
(936) 560-6020

Attorneys for Plaintiffs

**<u>Certificate of Conference/Compliance with Local Rule CV-7</u>**

The undersigned certifies that he has conferred with opposing counsel in a good faith

attempt to resolve this matter without the Court's intervention.  Defense counsel do oppose the

relief sought by the Plaintiffs in this discovery dispute.

Dated:  December 30, 2008          Respectfully submitted,


By:   __/S/ Teresa Demchak_____

Teresa Demchak, CA Bar No. 123989
tdemchak@gdblegal.com
Morris J. Baller, CA Bar No. 048928
mballer@gdblegal.com
Goldstein, Demchak, Baller, Borgen & Dardarian
300 Lakeside Drive, Suite 1000
Oakland, CA  94612-3534
(510) 763-9800

Timothy Garrigan, TX Bar No. 07703600
tim@sgclaw.org
Stuckey, Garrigan & Castetter Law Offices
2803 North Street
Nacogdoches, TX  75963-1902
(936) 560-6020

Attorneys for Plaintiffs

## **CERTIFICATE OF SERVICE**

I hereby certify that I have served all counsel of record in this case, including the

following, with a true and correct copy of the foregoing by sending same via electronic filing to:

Douglas Hamel
Christopher V. Bacon
Vinson & Elkins
2806 First City Tower
1001 Fannin Street
Houston, TX  77002-6760

on this 30th day of December, 2008.

                                         /S/ Teresa Demchak
                                 Teresa Demchak

32537-8