IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| SYLVESTER MCCLAIN, on his own and on behalf of a class of similarly situated persons, et al., | § § § | |
| | § | Civil Action No. 9:97-CV-063 |
| *Plaintiffs*, | § § | |
| v. | § | JUDGE RON CLARK |
| | § | |
| LUFKIN INDUSTRIES, INC. | § § | |
| *Defendant*. | § | |

## <u>ORDER Re: ATTORNEYS' FEES</u>

Plaintiffs move for an interim award of attorneys' fees, costs and expenses. [Doc. #599].

The motion includes a request of attorneys' fees, and the costs and expenses previously awarded

by Judge Cobb. Plaintiffs also submitted a Supplemental Bill of Taxable Costs [Doc. #600],

requesting costs accrued after Judge Cobb's award. By applying the lodestar methodology, the

court awards attorneys' fees totaling $4,740,195.80. The court also awards $140,562.26 in costs

and $932,603.84 in litigation related expenses.

## I. BACKGROUND

| | |
|---|---|
| February 26, 1997 | Plaintiffs filed an employment discrimination suit alleging that Defendant Lufkin Industries, Inc. engaged in racial discrimination in violation of Title VII and 42 U.S.C. § 1981. |
| March 31, 1999 | The court granted Plaintiffs' motion for class certification. |
| January 13, 2005 | After a bench trial, Judge Cobb entered a Memorandum and Order finding that Defendant Lufkin Industries discriminated by unlawfully making initial assignment and promotion decisions that |

|                   | disparately impacted Plaintiffs.  [Doc. #461].  The court ordered Lufkin Industries to pay class back pay pursuant to a formula and awarded injunctive relief.  Judge Cobb entered final judgment a day later. [Doc. #462]. |
|-------------------|--------------------------------------------------------------------------------------------------------------------------------------------------------------|
| January 19, 2005  | On Plaintiffs' motion, Judge Cobb ordered further proceedings "to determine the specific details of non-monetary remedial measures and to enter such supplemental remedial orders as may be necessary and appropriate." [Doc. #464]. |
| March 10, 2005    | Plaintiffs filed an initial motion for an award of attorneys' fees and costs.  [Doc. Nos. 499-502]. |
| August 29, 2005   | The court entered an Amended Final Judgment, reiterating a finding of discrimination, ordered Lufkin Industries to pay back pay, entered an injunction, and awarded attorneys' fees and costs. [Doc. #552]. |
| February 29, 2008 | The Fifth Circuit vacated the injunctive order and remanded to this court to craft a more specific remedial order.  The Fifth Circuit also reversed and remanded the portion of Judge Cobb's order awarding damages and attorneys' fees indicating that additional analysis was necessary.  *McClain v. Lufkin Industries, Inc.*, 519 F.3d 264 (5th Cir. 2008). |

## II. APPLICABLE LAW

Title VII provides that a court may, in its discretion, award the "prevailing party" in any action under that subchapter "a reasonable attorney's fee."  42 U.S.C. § 2000e-5(k).  A plaintiff may be considered a "prevailing party" if he succeeds on any significant issue in litigation that achieves some of the benefit the party sought in filing suit.  *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939 (1983).   Fee applicants bear the burden to show the reasonableness of the hours billed and must provide evidence in addition to their own affidavits.  *Blum v.*

*Stenson*, 465 U.S. 886, 896, 104 S.Ct. 1541, 1547 (1984); *Walker v. U.S. Dept. of Housing & Urban Dev.*, 99 F.3d 761, 770 (5th Cir. 1996).

The determination of what is a "reasonable attorney's fee" is left to the discretion of the trial court. *Hensley*, 461 U.S. at 433. To decide the appropriate attorney's fee, the trial court must calculate a "lodestar" fee by multiplying the number of hours reasonably expended on the case by a reasonable hourly rate. *Rutherford v. Harris County*, 197 F.3d 173, 192 (5th Cir. 1999).

The court should exclude time that is "excessive, duplicative, or inadequately documented" from the number of hours reasonably expended. *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993) (citing *Hensley*, 461 U.S. at 432-34, 103 S.Ct. at 1939; *Von Clark v. Butler*, 916 F.2d 255, 259 (5th Cir.1990)).

A reasonable hourly rate is set by the prevailing market rate charged by local attorneys. *Blum*, 465 U.S. at 895, 104 S.Ct. at 1547. A rate is reasonable if it is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 896, 104 S.Ct. at 1547. Thus, a more experienced attorney with expertise in a particular area of law may command a higher rate. The applicant must provide evidence of the education and experience of each attorney and paralegal for whom fees are requested.

Generally, the reasonable hourly rate is established through affidavits of other attorneys practicing in the district. *Tollett v. City of Kemah*, 285 F.3d 357, 368-69 (5th Cir. 2002). If the court deviates from an attorney's normal billing rate which falls within the range of market rates

for similarly capable attorneys, the court must articulate its reasoning. *Watkins v. Fordice*, 7 F.3d 453, 459 (5th Cir. 1993).

To adjust for inflation, deferred payment, and unpaid interest, the court may award attorneys' fees at the current hourly rate instead of historic hourly rates charged during the litigation process. *Missouri v. Jenkin by Agyei*, 491 U.S. 274, 284, 109 S.Ct. 2463,  (1989) (holding that plaintiffs are entitled to "an appropriate adjustment for delay in payment-whether by the application of current rather than historic hourly rates or otherwise.").

Where the claimed rate and number of hours are established as reasonable, the resulting product is presumed to be reasonable. *Blum*, 465 U.S. at 897, 104 S. Ct. at 1548. A presumption exists that the calculated lodestar is the reasonable fee and should only be modified in an exceptional case. *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993).

In determining whether to modify a lodestar, the court considers the twelve *Johnson* factors. *Rutherford v. Harris County, Tex.*, 197 F.3d 173, 192 (5th Cir.1999). The *Johnson* factors are: (1) time and labor required; (2) novelty and complication of the issues; (3) skill required; (4) whether the attorney had to refuse other work to litigate the case; (5) attorney's customary fee; (6) whether fee is fixed or contingent; (7) whether the client or case circumstances imposed any time constraints; (8) the amount involved and the results obtained; (9) attorney's experience, reputation, and ability; (10) whether the case was "undesirable;" (11) nature and length of relationship with the clients; and (12) awards in similar cases. *Id.* at n.23; *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). "[T]he most critical factor in determining the reasonableness of a fee award in a civil rights suit is the degree of success

obtained." *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 491 n.31 (5th Cir. 2001) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114, 113 S. Ct. 566 (1992)).

### III. ANALYSIS

## A. Prevailing Party

It is uncontested that Plaintiffs are the prevailing party. Judge Cobb previously found for Plaintiffs and the Fifth Circuit affirmed most of the District Court's findings, including the finding of unlawful disparate impact resulting from Lufkin's subjective decision making. Plaintiffs will obtain class back pay and an injunction. Plaintiffs sought this relief and are the prevailing party.

## B. Number of Hours

Plaintiffs assert that the hours billed are reasonable because new legal theories of "classwide discrimination arising from subjective decision making" were involved for which "no blueprint" was available. Doc. #599 at 12. Plaintiffs further contend that business judgment was exercised by deleting over 3,000 hours from time actually billed. *Id.* at 13. They provide detailed billing records for the attorneys and staff who worked at the law firm Goldstein, Demchak, Baller, Borgen & Dardarian ("the Demchak Firm") (Doc. #599, Ex. 24 to the Declaration of Teresa Demchak) and those who worked at the law firm of Stucky, Garrigan & Castetter ("the Garrigan Firm") (Doc. #599, Ex. 1 to Declaration of Timothy B. Garrigan).

Defendant objects to certain time billed on the basis that certain entries are duplicative or excessive time billed, the Demchak Firm overstaffed, the partners participated in work that lower paying attorneys could handle, the Garrigan Firm's records are alleged inadequate, and individuals billed non-working travel time at their full hourly rate. *Id.* at 15-19.

1. Allegedly Excessive, Duplicative, or Overstaffed Time

Excessive or duplicative time should be excluded. *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). The court also excludes hours that are overstaffed, being mindful that "the skill and experience of lawyers vary widely." *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 1939-40 (1983).

*a. June 28, 2000 to November 30, 2000*

Defendants assert that the Demchak Firm charged excessive fees before being appointed counsel for Plaintiffs as they charged approximately 422 hours to review papers, research and confer to decide if they wanted to be involved in the case during the time period between June 28, 2000 and November 30, 2000.[1] Reviewing the detailed records kept by the Demchak Firm, the court does not find excessive or duplicative time entries. Attorneys for the Demchak Firm reviewed the case documents during this time period. A review of the case is necessary to understand the legal and factual issues involved in the litigation. The attorneys also performed more substantive work on issues, such as (1) who would be an appropriate mediator; (2) potential bifurcation of the trial; and (3) providing notice to possible class members, including preparing for meetings with union representatives. All of these hours should be included in the lodestar calculation.

---

[1]Defendants assert that approximately 422 hours were billed between June 28, 2000 and October 2, 2000 by the Demchak Firm, citing the Declaration of Carolyn Wood. The declaration indicates that 422.4 hours were performed by the Demchak Firm between June 28, 2000 and November 30, 2008. The court assumes this is the appropriate time frame Defendant intended to indicate in its response.

*b. December 2000 to May 2003*

Defendant objects to the amount billed between December 2000 and May 2003 when the parties were mediating the case. Defendant insinuates that the amount charged is excessive because on a per day of mediation, the amount charged is large. However, Defendant billed for a number of activities over the two and a half year period and there were 22 days of mediation over that time frame. Dividing the total amount billed of the entire period by the number of mediations does not provide an accurate reflection of all of the work that occurred. Rather it is simply an attempt to skew the numbers to appear more favorable to Defendant's position.

Defendant further objects to the number of attorneys present at the mediations, with as many as four attorneys present at some of them. Defendant does not object to any specific entries or discuss why all attorneys were not needed at the mediations. For example, Defendant does not assert that it had only one attorney present. The court does not find any excessive or duplicative entries that must be removed.

*c. The number of hours billed during depositions*

Defendant criticizes the number of hours Plaintiffs' counsel spent taking depositions. Defendant objects to the number of attorneys present during five depositions in which at least two and once three attorneys were present. Usually, this court would find it excessive for more than two attorneys to attend a deposition in a complex case — one deposing the witness and another aiding the deposing attorney. Defendant has not asserted that a second attorney was not necessary, or at least helpful, at any deposition. Given the issues in this particular case, the fact that Ms. Demchak, a lead partner, was also present at one, or even a few, depositions is not

excessive. The court finds that the time billed for depositions is reasonable and will not be excluded.

*d. The number of lawyers present at trial*

Defendants indicate that Plaintiffs had five lawyers at counsel table during the first phase of trial then three lawyers present during the second phase of trial. Defendants do not provide the number of attorneys present at their table and do not indicate that they only had one attorney present. The court does not find the number of Plaintiffs' attorneys present at trial to be an excessive number given the complexity of the case. Multiple attorneys are often needed in complex cases. The court does not find this to be duplicative or excessive.

*e. The number of hours spent reviewing documents*

Defendants object to the 782.4 hours that the Demchak Firm spent analyzing and reviewing bid sheets. It is uncontested that Plaintiffs' own expert considered the bid sheets unreadable and not worthy of analysis. It may be reasonable for senior attorneys to review the bid sheets and the expert's opinions, but once an expert determined that the bid sheets were not worthy of analysis, additional time spent by paralegals and younger attorneys was unnecessary. The Demchak Firm makes no showing that the timed billed was prior to the expert's determination. The following time for review of bid sheets will be excluded.

| Reviewer | Number of Hours Spent |
|----------|----------------------|
| Konecky | 7.60 |
| Dungan | 363.90 |
| Rafanan | 134.40 |
| Gurtner | 216.50 |

| Stern | 167.50 |
|---|---|

## 2. Litigation Activities of Partners

Defendant objects to certain activities to which partners Ms. Demchak and Mr. Baller billed their time. Specifically, Defendants assert that Ms. Demchak should not have billed such excessive hours to draft Findings of Fact and Conclusions of Law; prepare for and attend depositions; discovery; or spend so much time drafting Plaintiffs' First Motion for Attorneys Fees; and that Mr. Baller should not have billed such excessive hours to draft Findings of Fact and Conclusions of Law.

The court recognizes that good attorneys litigate in their own manner and does not require an attorney to practice in a certain way. While Ms. Demchak engaged in tasks often associated with attorneys more junior than herself, it is possible that she completed these tasks more quickly, with less need for subsequent review and revision by another attorney. *League of United Latin American Citizens No. 4552 (LULAC) v. Roscoe Independent School Dist.*, 119 F.3d 1228, 1233, n.3 (5th Cir. 1997). It is also understandable that she wished to take part in the drafting of the Motion for Attorney Fees due to the large amount owed to Plaintiffs' counsel. The court does not find that any of these activities in which Ms. Demchak and Mr. Baller participated were unnecessary and should be excluded.

## 3. The Garrigan Firm's Records

Defendant contends that the Garrigan Firm's Records are inadequate because they lack detail. Doc. #610 at 18. Defendant does not cite specific examples, rather asserting that the Garrigan Firm's records "consist almost entirely" of non-detailed entries. While inadequate documentation may reduce the award of attorneys' fees, the court finds the Garrigan Firm's

records sufficiently detained to determine (1) the activity; (2) the participants; and (3) the work product. *See Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). While not verbose, the Garrigan Firm's records provide sufficient detail to understand the nature of the work. A representative entry, the time entry on September 4, 2003, states:

| | | |
|---|---|---|
| travel: Nac-Beaumont-Nac | 5 hr | |
| mediation | 7 hr | 30 min |
| post-mediation mtg w/ Atty Demchak & clients | | 30 min |

Doc. #599, Ex. 1 to Declaration of Timothy Garrigan at p. 92.

The court is easily able to determine that Mr. Garrigan traveled from Nacogdoches, TX to Beaumont, TX then drove back to Nacogdoches. He also attended a mediation between the parties and then had a meeting with his clients and Ms. Demchak.

Moreover, because Mr. Garrigan interacted with his co-counsel from the Demchak Firm, many cross-references exist in each firm's billing records. These provide the additional clarification desired and the court sees no reason to reduce the hours billed by the Garrigan Firm.

### 4. Travel Billed at the Full Rate

Defendant contends that Plaintiffs' counsel are not entitled to the full billing rate for travel time. The Demchak Firm billed 545 hours of travel time, in addition to the 153 hours of working travel time, while the Garrigan Firm billed 301 hours of travel time. An attorney's stock in trade consists of knowledge, the ability to communicate and time. The court finds it reasonable to travel to a deposition, mediation, or trial and bill the time at an attorneys' full rate. Working while traveling is often difficult and is unsafe if the attorney is driving a car. It might be unreasonable for an attorney to bill large amounts of travel time for a short event of relatively minor importance that could be handled telephonically or by local counsel, but there is no

indication that this occurred.  When attorneys from the Demchak Firm traveled to the Eastern District they performed multiple functions, such as a deposition coupled with a number of days of mediation.  The court does not find that either the Garrigan Firm or the Demchak Firm has excessively billed travel time.  The court will not make reductions for any travel time.

5. Summary of Excluded Hours

The total number of hours the court will exclude for all unreasonable entries, objected to by Defendant or found by the court, is as follows:

| Attorney | Total Hours Excluded |
| --- | --- |
| Konecky | 7.6 |
| Dungan | 363.9 |
| Rafanan | 134.4 |
| Gurtner | 216.5 |
| Stern | 167.5 |

## C. Appropriate Rate

### 1. Mr. Garrigan of the Garrigan Firm

Mr. Garrigan bills his time at $400/hr.  To support his billing rate he offers affidavits of partners who engage in complex litigation in the Eastern District of Texas, namely Clayton Dark, Claude Welch, and Otis Carroll.[2]  These attorneys practice regularly in this court, and the court is familiar with their qualifications and the quality of their work.  They state that Mr. Garrigan's rate of $400/hr is reasonable.

---

[2]Stephen D. Susman also provided his billing rate, but he practices nationally and is located in Houston, which is located in the Southern District of Texas, not the Eastern District. The court does not find his affidavit probative of the rates charged in the Eastern District of Texas.

Mr. Garrigan's comparison to those who participate in complex litigation is appropriate. This class action was complex. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 614, 117 S. Ct. 2231, 2245 (1997); *Gates v. Cook*, 234 F.3d 221, 227 (5th Cir. 2000) ("It is a well-established principle that district courts enjoy wide latitude in managing complex litigation in general and class actions in particular."); Fed. R. Civ. P. 23 (g)(1)(A)(ii); *see also* Manual for Complex Litigation § 21 (4th ed. 2004).

Depending on the circumstances, a "normal" employment law case may also qualify as complex litigation. Manual for Complex Litigation § 32.1 (4th ed. 2004) ("complexity can be introduced into employment discrimination suits by class action allegations, questions regarding the scope of discovery, the technical nature of expert testimony, and issues relating to the granting of relief, whether by way of judgment or consent decree."). When the class was certified, Judge Cobb approved Mr. Garrigan as class counsel because he was experienced both in employment law and complex litigation. *McClain v. Lufkin Indus., Inc.*, 187 F.R.D. 267, 282 (E.D. Tex. 1999). The class action and the nature of the case which involved discrimination in the hiring and promotion procedures at Lufkin Industries and the asserted legal theories makes this case a complex case.

Attorneys experienced in employment law from the Eastern District of Texas agree that the case needed to be handled by attorneys experienced in complex litigation and find the rates charged by Mr. Garrigan are reasonable. *See e.g.* Declaration of Joe C. Tooley at ¶1 (stating that Mr. Garrigan's request of $400/hr is within the range of fees charged by those in the Eastern

District of Texas who handle complex litigation matters);[3] Declaration of Franklin Jones, Jr. at 2 (stating that Mr. Garrigan's rate of $400/hr is within the range of fees paid to attorneys in the Eastern District of Texas).[4]  The court will therefore apply a $400/hr rate for the work performed by Mr. Garrigan.

## 2. Partners at the Goldstein Demchak Law Firm

Plaintiffs contend that the court should disregard the local rates for the Goldstein Demchak Law Firm ("Demchak Firm") and apply a rate commensurate with attorneys from the northern California area where the Demchak Firm is located because of its unique experience dealing with employment discrimination class action cases.

When the Demchak Firm entered the case in 2000, Mr. Garrigan had already certified the case and Lufkin's appeal had been rejected.  While it was still necessary to mediate the case, complete discovery, and try the case, Mr. Garrigan participated to a greater extent than any other attorney.  He certified the class, was lead counsel throughout the entirety of the case, and examined 11 out of 22 witnesses at trial.  The Demchak Firm possessed experience settling class action employment cases, but there is no evidence to suggest that they were experienced at trying such cases.

Plaintiffs have firmly established that in calculating the fee for Mr. Garrigan the appropriate community for rate comparison purposes are those who participate in complex litigation in the Eastern District of Texas.  It would be difficult to justify assigning a higher

---

[3] The court will take notice that Mr. Tooley practices in the field of civil rights in the district.

[4] The court is familiar with Mr. Jones' experience in the district.

hourly rate to second-chair attorneys, no matter how skilled in employment law. No unusual circumstances exist to suggest that those in the Eastern District who have experience with complex litigation were unavailable and could not have effectively participated. The court is aware of many attorneys in the Eastern District experienced in employment law and complex litigation. Two who would not be likely to have a conflict with Lufkin Industries are Clyde Siebman and John Werner. Absent sufficient evidence that experienced, qualified local counsel were unwilling to participate, the court will not assume counsel from distant states were necessary. Counsel at the Demchak Firm are located in Oakland, California, but it was their choice to participate on this case. Mr. Garrigan brought the suit, certified the class and carried the yeoman's burden at depositions and trial. Based on the affidavits, Mr. Garrigan was the attorney with extensive experience as first chair in actual trials. The Demchak Firm's attorneys undoubtedly provided valuable support but they cannot expect to receive rates fifty percent higher than Mr. Garrigan's, especially when the court has approved the time they spent in traveling from California.

Hourly rates should be computed according to the prevailing market rates in the relevant legal market. *Van Ooteghem v. Gray*, 774 F.2d 1332, 1338 (5th Cir. 1985). This court will apply local rates for the Demchak Firm. *Hopwood v. State of Texas*, 236 F.3d 256, (5th Cir. 2000) (affirming the district court's reduction in the hourly rate of Theodore Olson, an appellate litigator of note whose rate had been upheld as reasonable by the D.C. Circuit in an unrelated case, because the relevant market was Austin, TX, not the District of Columbia).

However, the rates should not be less than $250/hr, as Defendant contends. Doc. #610 at 14. Partners from the Demchak Firm actively participated in discovery, conducted a number of

depositions and examined 11 witnesses at trial. Their contributions provided valuable second-chair assistance to Mr. Garrigan. The court will apply the hourly market rate for all partners at the Demchak Firm at $400/hr, the same market rate charged by Mr. Garrigan. This includes Teresa K. Demchak, Morris J. Baller, David A. Borgen, and Linda M. Dardarian.

3. Associates, Law Clerks, Paralegals and Case Clerks

The Garrigan Firm billed time for a paralegal, and the Demchak Firm billed time for associates, a law clerk, senior paralegals, paralegals, and case clerks. The individuals billed between $110/hr and $465/hr. Plaintiffs fail to provide any affidavits from attorneys practicing in the Eastern District of Texas setting out reasonable ranges for associates, law clerks, paralegals, or case clerks. The court is left with the representations made by Defendant and the attorneys who provided affidavits to Defendant.

Defendants provide specific rate information from three different attorneys located in the Eastern District of Texas — Curtis Fenley, Larry Germer, and Richard Alderman. The maximum rates charged by the attorneys for associates is $125 at Mr. Fenley's firm and $160 at Mr. Germer's firm. Defendants' associates are qualified and the court will use the $160/hr fee set by Mr. Germer's firm as the appropriate market rate for associates.

The Garrigan Firm billed its paralegal at $125/hr. As discussed above, the Garrigan Firm billed its partner's time at the market rate. The court likewise finds that the Garrigan Firm billed its paralegal, Ms. Davis, at the appropriate market rate for this complex case, given her extensive experience, and will use this $125/hr fee as the market rate for the hours billed by The Demchak Firm's "Senior Paralegals." The other paralegals and case clerks will be billed at the rate requested, as these lower rates appear commensurate with their experience and responsibilities.

15

In sum, the court determines the rate to be applied in the lodestar calculation for each individual's time as follows[5]:

For the Garrigan Firm:

| Individual | Rate ($/hr) |
|---|---|
| Timothy Garrigan (Partner) | 400 |
| Anne Davis (Paralegal) | 125 |

For the Demchak Firm:

| Individual | Rate ($/hr) |
|---|---|
| Teresa K. Demchak (Partner) | 400 |
| Morris J. Baller (Partner) | 400 |
| David A. Borgen (Partner) | 400 |
| Linda M. Dardarian (Partner) | 400 |
| Darci E. Burrell(Associate) | 160 |
| Joshua G. Konecky (Associate) | 160 |
| Meetali Jain (Associate) | 160 |
| Nina Rabin (Associate) | 160 |
| James Kan (Associate) | 160 |
| Jennifer A. Stalzer (Law Clerk) | 125 |
| Lisa M. Dungan (Senior Paralegal) | 125 |
| Scott G. Grimes (Senior Paralegal) | 125 |
| Lynn E. Sagramoso (Senior Paralegal) | 125 |
| Damon Valdez (Senior Paralegal) | 125 |
| Wendy E. Whitt (Senior Paralegal) | 125 |

---

[5]Plaintiffs' counsel provided a billing record as Appendix 1 to its motion.  Doc. #599-2.

| | |
|---|---|
| May G. Rafanan (Paralegal) | 100 |
| Mark Thurston-Baller (Paralegal) | 100 |
| Natasha Gurtner (Paralegal) | 100 |
| Charlotte Manapat-Nguyen (Paralegal) | 100 |
| Lena Borgen (Case Clerk) | 73 |
| Rebekah Stern (Case Clerk) | 73 |

D, Lodestar Calculation

The Lodestar is calculated by multiplying the rate for each individual by the number of hours worked by that individual.

| Individual | Rate ($/hr) | Net Hours | Billable Amount |
|---|---|---|---|
| Timothy Garrigan | 400 | 3213 | $1,285,200.00 |
| Anne Davis | 125 | 407 | $50,875.00 |
| | | | |
| Teresa K. Demchak | 400 | 4,625 | $1,850,000.00 |
| Morris J. Baller | 400 | 1,066.4 | $426,560.00 |
| David A. Borgen | 400 | 29.8 | $11,920.00 |
| Linda M. Dardarian | 400 | 325.4 | $130,160.00 |
| Darci E. Burrell | 160 | 2,317.1 | $370,736.00 |
| Joshua G. Konecky | 160 | 882.4 | $141,184.00 |
| Meetali Jain | 160 | 67.8 | $10,848.00 |
| Nina Rabin | 160 | 308.9 | $49,424.00 |
| James Kan | 160 | 129.6 | $20,736.00 |
| Jennifer A. Stalzer | 125 | 27.6 | $3,450.00 |
| Lisa M. Dungan | 125 | 1,203.5 | $150,437.50 |
| Scott G. Grimes | 125 | 584.4 | $73,050.00 |
| Lynn E. Sagramoso | 125 | 31 | $3,875.00 |

| | | | |
|---|---|---|---|
| Damon Valdez | 125 | 30 | $3,750.00 |
| Wendy E. Whitt | 125 | 159.2 | $19,900.00 |
| May G. Rafanan | 100 | 272.9 | $27,290.00 |
| Mark Thurston-Baller | 100 | 64.3 | $6,430.00 |
| Natasha Gurtner | 100 | 656.9 | $65,690.00 |
| Charlotte Manapat-Nguyen | 100 | 50.2 | $5,020.00 |
| Lena Borgen | 73 | 41.6 | $3,036.80 |
| Rebekah Stern | 73 | 419.5 | $30,623.50 |
| | | | |
| **Total** | | | **$4,740,195.80** |

## E. Adjustment Due to the *Johnson* Factors

Once a claimed hourly rate and the claimed number of hours has been found to be reasonable, the product is presumed to be a reasonable fee. *Blum*, 465 U.S. at 897, 104 S. Ct. at 1548. Plaintiff has the burden of proving that the case is exceptional and consideration of the *Johnson* factors warrants an upward adjustment. *Watkins*, 7 F.3d at 457; *Rutherford*, 197 F.3d at 192-93.

Exceptional results are generally reflected in the lodestar. *Blum*, 465 U.S. at 899, 104 S.Ct. at 1549. It is rare that an applicant can show results that transcend what can be expected given the hourly rates and hours expended. *See Delaware Valley* 478 U.S. 546, 567, 106 S.Ct. 3088, 3099 (1986); *Shipes v. Trinity Industries*, 987 F.2d 311, 322 (5th Cir. 1993). In this case counsel charged high hourly rates, commensurate with their experience, and spent a great deal of time on the case. They did not prevail on every issue but did achieve a significant benefit. They have provided insufficient specific evidence of startling or exceptional results or adverse circumstances that would overshadow or dwarf the presumptively correct lodestar.

## 1. The Degree of Success Obtained

Plaintiffs were not successful on all of their claims. Plaintiffs did not succeed on an initial assignment claim, which was factually distinct from the promotion claim, or the disparate treatment claims that Plaintiffs advanced in the district court and on appeal. Nevertheless, Plaintiffs obtained significant relief. Plaintiffs will obtain both monetary and injunctive relief.

While the specific monetary and injunctive relief has not yet been crafted, the amount of monetary award does not impose a presumptive limit on Plaintiffs' recovery of attorneys' fees. *See, e.g., Volk v. Gonzalez*, 262 F.3d 528, 535 (5th Cir. 2001); *see also, City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986); *Green*, 284 F.3d at 663 (applying Riverside's holding in Title VII case).

Plaintiffs were ultimately successful on some, but not all, of their initially asserted claims, achieving significant results. This factor is neutral and does not suggest an upward or a downward adjustment.

## 2. The Other *Johnson* Factors

Defendant argues that none of the other factors suggest an upward adjustment. Plaintiffs likewise do not contend that any of the other factors support an increase in the award, merely maintenance of the award. The court agrees with the parties and similarly finds that none of the other factors suggest either an upward or a downward departure as this is not an exceptional case. The lodestar's strong presumption of reasonableness holds and the court will not adjust the lodestar. *Watkins*, 7 F.3d at 457. For completeness, the court will briefly discuss the other factors.

*a. Time and labor required*

This case involved significant time and labor expended over more than a decade. Attorneys' hours and labor were included in the lodestar calculation. No additional adjustment is required to fully compensate the attorneys for the work performed.

*b. Novelty and complication of the issues, skill required, attorney's customary fee.*

These factors are all reflected in the number of hours billed and the reasonable hourly fee. *City of Burlington v. Dague*, 505 U.S. 557, 562-63, 112 S.Ct. 2638, 2641 (1992). Any adjustment to this factor would constitute double counting. Similarly, no enhancement due to this case being taken on a contingent fee is required. *Id.* at 566-67, 2643. This factor supports awarding the lodestar, without adjustment.

*c. Whether the attorney had to refuse other work to litigate the case*

This case involved over 10,000 attorney and paralegal hours. This case likely prevented the attorneys from pursuing other work. On the other hand, this case also provided the opportunity to bill many more hours than most other cases. These issues are reflected in the lodestar calculation in the number of hours billed and the hourly rate. There is no evidence that either firm lost clients because of a conflict or because the case was viewed undesirable. These factors support awarding the lodestar, without adjustment.

*d. Whether the client or case circumstances imposed any time constraints*

This case did not present any particular time constraints besides the large amount of time and labor required as discussed above. This factor supports awarding the lodestar, without adjustment.

*e. Attorney's experience, reputation, and ability*

Attorneys from the Garrigan Firm and the Demchak Firm are comparable to those practicing employment and complex litigation in the Eastern District of Texas. The court set rates for attorneys commensurate with this finding. This factor supports awarding the lodestar, without adjustment.

*f. Whether the case was "undesirable"*

This case was taken on a contingency fee basis. Declaration of Timothy Gerrigan at ¶ 7. From the beginning named Plaintiffs desired to pursue a class action. *Id.* Although these may present difficulties, the case is no more or less desirable than any other employment case in which an attorney is paid a contingent fee. Any additional complexity from the pursuit of a class action is reflected in a larger number of hours being billed compared to non-class action employment cases. This factor supports awarding the lodestar, without adjustment.

*g. Nature and length of relationship with the clients*

There is no evidence that counsel knew Plaintiffs prior to the litigation of this case or have represented any Plaintiff in another matter. The decision to represent Plaintiffs was an isolated decision and this factor does support deviation from the lodestar.

*h. Awards in similar cases*

The parties do not present any comparable case and the court does not find any. However, the calculated lodestar, $4,737,714.30, is comparable to the amount billed by Defendants' counsel in this case, $4,864,923.37. Counsel for both sides dealt with the same set of facts and legal issues, and it would not be unusual if similar attorneys' fees were generated. The court finds the comparison a useful method of cross-checking the amount requested by

Plaintiffs' counsel.  *See* Alan Hirsch & Diane Sheehey, Awarding Attorneys' Fees and Managing Fee Litigation 108 (Federal Judicial Center 2d ed. 2005).  This factor supports award of the lodestar, without enhancement.

**G. Other Costs**

1. Prior to January 15, 2005

Judge Cobb awarded Plaintiffs' counsel $127,658.60 in taxable costs and $840,129.72 in litigation related expenses.  Defendant now objects to a portion of this amount — the litigation costs for work done by Richard Drogin.  Doc. #610 at 22.  No claim of error in this regard was made in Defendant's Notice of Appeal [Doc. #557], and the Circuit Court did not indicate that this was one of the issues to be considered on remand.  The court finds that this point has been waived.  Alternatively, Defendant's only argument — that Dr. Drogin spent time analyzing data pertaining to issues on which Plaintiff did not ultimately prevail — is not well taken.  Plaintiff achieved significant results including a substantial monetary award.  Defendant is liable for the full amount of litigation related expenses previously awarded.

2. Costs from January 15, 2005 through December 31, 2008

Plaintiffs filed a Supplemental Bill of Taxable Costs requesting $12,903.66 in costs. [Doc. #600].  They also requested $92,474.12 in other litigation related costs and expenses.  Doc. #599 at 1.  Defendant did not respond to Plaintiffs' Supplemental Bill of Taxable Costs or Plaintiffs' request for additional litigation related expenses and is assumed not to oppose either. L.R. CV-7(d).  The court finds these costs and expenses reasonable and awards Plaintiffs the additional amount of $12,903.66 in taxable costs and $92,474.12 in other litigation related costs and expenses.

## IV. Conclusion

This case was tried before Judge Cobb who found that Lufkin Industries has engaged in discriminatory practices; entered an injunction; and awarded monetary damages, attorneys' fees, and litigation expenses. The Circuit Court upheld the liability findings as to promotions and remanded not with instruction to eliminate the injunction, but to word it more clearly. The awards of monetary damages and attorneys' fees were not to be canceled but were to be recalculated. No point of error raised by Defendant concerning the calculation of litigation expenses or costs was mentioned in the Circuit Court's opinion, and that part of Judge Cobb's order was not reversed.

Therefore this court finds that even though a final judgment on the merits has not been entered, Plaintiffs are the prevailing party. *See Texas State Teachers Ass'n v. Garland Independent School Dist.*, 489 U.S. 782, 791-93, 109 S.Ct. 1486, 1493-94 (1989); *Walker v. City of Mesquite, TX,* 313 F.3d 246, 249-50 (5th Cir. 2002). They have achieved significant results in terms of injunctive relief and a monetary award regardless of the precise wording of the final injunction or the exact amount eventually awarded.

The fees, expenses and costs set out in this order "represents compensation for work that is compensable no matter what the course of subsequent events." *See Shipes v. Trinity Industries, Inc.*, 883 F.2d 339, 344 (5th Cir. 1989). In accordance with Fed. R. Civ. P. 54 (b), the court determines there is no just reason for further delay in the entry of this order,[6] and the

_____

[6]This case has been pending for twelve years. Counsel for Defendants have been paid in accordance with whatever schedule they chose to agree upon, while counsel for Plaintiffs have been uncompensated and have advanced substantial sums of their own money. It appears to the court that Defendants have had little interest in correcting their discriminatory practices before, and even after, the Circuit Court affirmed Judge Cobb's finding of liability. Further delay would

accompanying judgment shall be a final appealable judgment as to these fees, expenses, and costs.

IT IS THEREFORE ORDERED that Plaintiffs' Motion for an Interim Award of Reasonable Attorneys' Fees, Costs, and Expenses [Doc. #599] is **GRANTED IN PART**, and Defendant Lufkin Industries, Inc. shall pay Plaintiffs $4,740,195.80 for attorneys' fees and $932,603.84 in litigation related expenses. (This amount includes the $840,129.72 previously awarded by Judge Cobb.)

IT IS FURTHER ORDERED that Plaintiffs' Supplemental Bill of Taxable Costs [Doc. #600] is **APPROVED**, and Defendant Lufkin Industries, Inc. shall pay Plaintiffs $140,562.26 in taxable costs. (This amount includes the $127,658.60 in taxable costs previously awarded by Judge Cobb.)

So **ORDERED** and **SIGNED** this **2**   day of **April, 2009.**

_____
Ron Clark, United States District Judge

---

neither advance justice nor further Congressional intent in encouraging qualified counsel to take on such complicated and time consuming cases.