IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| Sylvester McClain, et al. | § | Civil Action No. 9:97 CV 063 (CLARK) |
|    Plaintiffs, | § | |
| v. | § | |
| Lufkin Industries, Inc. | § | |
|    Defendant. | § | |

**<u>PLAINTIFFS' MEMORANDUM IN SUPPORT OF AMENDED PROPOSED FURTHER ORDER FOR MONETARY RELIEF</u>**

97515-10

Pursuant to the Court's Order entered August 25, 2009 (Dkt. 662), Plaintiffs, Sylvester McClain, Buford Thomas, et al., submit this Memorandum in Support of their proposed Further Order for Monetary Relief, submitted to the Court on September 9, 2009 (Dkt. 669), as slightly revised in the Amended Proposed Further Order submitted herewith.

### I. PROCEEDINGS AND COMMUNICATIONS AMONG THE PARTIES SINCE ENTRY OF THE COURT'S AUGUST 25, 2009 ORDER

As Plaintiffs informed the Court in their August 21, 2009 Status Report on Monetary Relief Proceedings (Dkt. 660), Lufkin had not by that time responded to Plaintiffs' proposed plan, in outline form, for award and distribution of class back pay, which Plaintiffs had sent to Lufkin on August 3, 2009. *See*, Status Report (Dkt. 660 at 5 and n.5). In that Status Report, Plaintiffs requested that the Court set a schedule requiring Lufkin to respond to Plaintiffs' proposed plan and for the parties to meet and confer in an attempt to resolve any differences or narrow the issues for resolution by the Court. (*Id.* at 7) The Court did so in its August 25 Order, adopting a schedule slightly different from – and more expedited than – the schedule proposed by Plaintiffs.

In response to that Order, Plaintiffs submitted a fully fleshed-out proposal for the award and distribution of class back pay, in the form of the previously mentioned proposed Further Order, on September 9, 2009 (Dkt. 669). Under the Court's August 25 Order, the next step in the required process was for "the parties [to] meet and confer in good faith regarding the plan." (*Id*. at 2) The parties have now done so, beginning with an initial conference call on September 18, and continuing with a series of conference calls and exchanges of data and information relevant to the discussion of monetary relief issues.

In the course of these discussions, it developed that the willingness and ability of the parties to resolve differences relating to the content and form of a judgment for monetary relief depended to some extent on the resolution of certain outstanding injunctive relief issues. For this

1

reason, the parties have continued discussions of the monetary and injunctive relief issues concurrently and, at times, in the same meetings.[1] The discussions concerning injunctive relief issues have resulted in agreement of the parties on all issues, which is to be incorporated into a proposed injunction to be considered by the Court.[2] In addition, these discussions resulted in agreement on many aspects of the proposed class back pay distribution plan.

Based on these proceedings, Plaintiffs now respond to the Court's inquiry whether "any good faith objections or points of disagreement remain" to Plaintiffs' September 9 proposed Order (Dkt. 662 at 2) (as revised in the amended proposal submitted herewith), and set out their positions on those points in Section III of this Memorandum. There remain only two points in dispute, as described in Section III. But before addressing those points, it is necessary for Plaintiffs to summarize and explain the several minor amendments in their previously proposed Order, which resulted from the further communications with Lufkin and the proposed Third Party Administrator to be appointed under Plaintiffs' proposed plan.

## II. SUMMARY AND EXPLANATION OF AMENDMENTS TO PROPOSED ORDER

### A. **Minimum per-capita payments to all class members.**

As a result of the further discussions, the amount of the minimum payment to each class member, without regard to whether the class member satisfies the minimum time worked requirement (Exh. A at 6 [§III.D.1]), has been increased from $250 to $375. The total amount of money required for this payment is approximately $484,500, based on the current estimate of 1,292 class members; this represents approximately 9% of the total back pay award including interest. The parties believe that this is an appropriate, still modest amount to distribute among

---

[1] The Court's granting of an extension of time for the submission of the parties' positions on monetary relief issues to October 2, 2009 – the same date that their submissions on injunctive relief are due – facilitated this broader discussion.

[2] The parties' agreement is not, however, a settlement of all issues. Lufkin has agreed to the form of the judgment incorporating the injunctive relief order, reserving Lufkin's right to appeal from that judgment.

2

all class members in light of the impossibility of saying that, but for the discriminatory practices found by the courts, any particular class member could not have received a promotion.

B.    **Participation payments (Exh. A at 7-9 [§III.D.2])**

Plaintiffs have slightly modified their schedule of proposed Participation Payments by increasing the award to one Class Representative, Florine Thompson, from $9,026 to $13,526. The initial amount proposed for Ms. Thompson was based on Class Counsel's inaccurate application of the enhancement factors to her, which has now been corrected. Other than that, the amounts proposed by Plaintiffs remain the same, as do the percentages of the total back pay fund that they represent.

The parties have discussed Lufkin's position with respect to the proposed Participation Payments on several occasions. As this submission was being finalized, Lufkin's attorneys informed Plaintiffs' counsel that Lufkin does not agree with the proposed Participation Awards.

C.    **Payments to and functions of Administrator (Exh. A at 3-4 [§III.A])**

The Amended Proposed Further Order contains relatively minor revisions to the provisions defining the functions to be carried out by the Third Party Administrator. These revisions resulted from Plaintiffs' counsel's discussion of the proposed assignment with the nominated administration company, and advice given by that company based on its extensive experience with notice, mailing, and claim procedures similar to those proposed for this case. In particular, the proposed Administrator counseled Class Counsel not to propose communications from class members by email rather than telephone (harder for Administrator to log, manage, and control), to provide for delivery of payment checks by UPS Ground service with confirmation service rather than USPS registered mail (UPS provides a less expensive and time consuming process), and not to provide for a website dedicated to class members (unnecessary and expensive to build and maintain).

It is possible that administrative costs will slightly reduce the amount available for distributions to the class. The Administrator has estimated that the proposed services can be

provided for slightly less than the $50,000 that Plaintiffs propose should be advanced by Lufkin. However, the actual costs will depend on factors that cannot be predicted with certainty (the number of address traces required, the volume of calls and questions from class members, the number of employment date challenges by class members, etc.), and the range of costs considered possible by the Administrator reaches $61,500 at the high end; if the actual costs exceed $50,000, they are to be paid from interest earned on the Class Monetary Relief Account or unclaimed funds from that Account.

### III. PLAINTIFFS' PROPOSED ALLOCATION AND DISTRIBUTION PLANS ARE APPROPRIATE AND NECESSARY TO ASSURE A COMPLETE AND FAIR DISTRIBUTION OF BACK PAY TO CLASS MEMBERS.

#### A. The Amount of Back Pay and Interest to be Awarded

There are no remaining disputed issues between the parties relating to the total amount of back pay and interest, other than those the Court has decided by its previous Orders. *See*, Plaintiffs' Proposed Further Order re Monetary Relief (Dkt. 669) at 1. Thus, there is no further need for Plaintiffs to brief those matters and the Court should adopt the provisions of the Amended [Proposed] Order specifying amounts of back pay and interest (Exh. A at 1-3 [§ I]).[3]

#### B. The Form of the Judgment for Monetary Relief

There is an outstanding issue with regard to whether the award of back pay and interest should be divided into a number of parts - one division between the amounts for salaried promotions (which the Court held payable over Lufkin's argument to the contrary) and hourly promotions, and the other division between amounts payable for different time periods, most notably the period up to the end of 1995 (for which the Court held Lufkin liable over its

---

[3] The total amount of back pay to be awarded is $3,269,845 plus interest. If the date of entry of judgment were December 31, 2009, the total with interest would amount to $5,477,320.10. This is the number that Plaintiffs use to estimate the percentages of the total award allocated to various categories of payments. *See*, Plaintiffs'[Proposed] Further Order re Monetary Relief, filed September 9, 2009 (Dkt. 669).

4

argument to the contrary) and the period beginning with 1996 (as to which there was ultimately no dispute, at least for hourly positions).  *See*, Order Denying Partial Summary Judgment entered June 22, 2009 (Dkt. 646) and Order re Damages entered June 22, 2009 (Dkt. 647).[4]  As Plaintiffs now understand Lufkin's position,[5] it seeks to divide the award into as many as six parts, one or several of which – constituting the amount of damages due for hourly promotions during the period 1996-2007 - it contends can be paid out prior to the adjudication of the appeal that Lufkin may take on the 1994-1995 time period and salaried promotions issues.

Plaintiffs oppose such a division, and their proposed Order does not provide for a division of the judgment into different parts.  While recognizing the benefit of immediate payment of the undisputed portion of the judgment to class members entitled to share in it, even if and while Lufkin pursues an appeal that could potentially change the payments due on other portions of the judgment, on closer examination of how that would be implemented, Plaintiffs do not think this cannot be done fairly and efficiently.  It is neither practicable nor advisable to divide the money award into portions, with one part to be paid out before any decision on Lufkin's possible appeal to the Fifth Circuit and the remaining portions to be paid out after the appellate court has ruled (and this Court completes any necessary proceedings on remand).

It would be practicable and desirable to make such a partial payment if the amounts to be paid to individual class members entitled to payment from the undisputed portion of the award, and the total amount to be paid on that portion of the award as opposed to the portions subject to

---

[4] Although Lufkin has stated that it may appeal the Court's rulings that Lufkin is liable for back pay due to lost hourly promotions in 1994-95 and due to any salaried promotions, it recognizes that, in light of the Court's rulings, the judgment should include amounts for the 1994-1995 period and salaried promotions.  Plaintiffs are confident that the Court's rulings will be upheld on any appeal but recognize that Lufkin has the right to appeal on either or both of the two rulings.

[5] Plaintiffs have been informed in conversations of counsel within the past few hours that Lufkin may urge that the judgment be divided into as many as six portions; however, at the time of completion of this Memorandum, Plaintiffs' counsel are not sure exactly what divisions Lufkin will propose.

appeal, did not depend on which portions of the judgment Lufkin may appeal and the outcome of such an appeal. But, unfortunately, that is not the case. Both the division of the overall classwide award between the amounts attributable to hourly promotions in 1996-2007 and the amounts attributable to hourly promotions in 1994-1995, and the division of the award between the amounts attributable to hourly promotions and salaried promotions, will affect the amounts to be distributed to Class Members from the undisputed portion of the award in a number of complicated ways that are summarized below.

The proposed formula for calculation of the time-worked payments agreed to by the parties equalizes the value of each week worked by class members (i.e. does not make the value depend on when the weeks were worked), yet permits interest to be awarded separately (i.e., based on the years in which the time was worked) to add appropriate value for the delay in payment. Over 85% of the Monetary Relief Fund is proposed – and this is not disputed by the parties - to be distributed by this formula that is the product of extensive discussions with Class Representatives and that is relatively easy to understand and explain. It will not be possible to equalize the value of weeks worked if there are separate partial payments based on different contested liability periods or portions of the class. Also, hundreds of individual class members would receive different values for weeks they worked in the different time periods or while they were in different classifications as hourly or salaried employees, and it will be hard for them to understand or Class Counsel to explain why this proper and how it works.

Under a divided award, the amount of damages that will be awarded for time worked in 1996-2007 will be greater, on a per-week basis, if the 1994-1995 time period is included in the liability period than if it is not (i.e. Lufkin appeals and wins on this issue on appeal). If the incremental amount payable for time worked in 1996-2007 is withheld from an initial distribution to class members based on hourly promotions only in those years, and that amount is then paid out to class members employed in 1994-1995 after Lufkin loses on its appeal, the amount withheld from class members who worked in 1996-2007 will effectively have been transferred to those employed in 1994-1995 – not the same group of individuals. Likewise, if the

amount of damages attributable to salaried promotions is withheld from an initial payment to class members who worked in 1996-2007 and later paid out to class members employed in salaried positions, that amount will effectively have been transferred from 1996-2007 employees (most of whom held hourly positions) to the much smaller number of class members who held salaried positions. This skewing effect is especially pronounced in favor of those class members who held salaried positions in 1994-1995, when the damages calculated for salaried promotions were especially large.

If, in order to avoid the intra-class transfers described above, the incremental amounts withheld pending the outcome of an appeal and payable to 1996-2007 class members were instead paid out to class members after the appeal (assuming Lufkin loses its appeal), this would result in greatly increased administrative and accounting expenses for two separate distributions, and – more importantly – would cause great confusion and require time-consuming explanations by Class Counsel (and perhaps Lufkin) to class members. It would also engender another set of back pay proceedings before the Court when the outcome of the appeal is known.

The class definition and the number of class members would change, if Lufkin succeeds on either issue on appeal. Class members who worked only in 1994-1995, and/or those who worked in salaried positions, would be excluded from the class recovery in that event. Moreover, the class membership status of employees whose 90 consecutive days of employment (necessary to have been eligible for a time-worked award) straddled the calendar years 1995 and 1996, but who did not work the requisite 90 days after 1995, would remain indeterminable until after the outcome of the appeal. These factors would occasion a recalculation of the per-capita and time-worked portions of the class payments after an appeal. At a minimum, such a recalculation would be time-consuming and inefficient.

The number of weeks worked by some class members – those who were employed in both the 1994-1995 and the 1996-2007 time periods – will change based on whether Lufkin succeeds on its appeal of the liability period issue. This would affect the calculation of payments

7

based on weeks worked, requiring a second round of determinations and administrative procedures if the judgment is paid out in stages.

Finally, if only a portion of the judgment is to be paid out pre-appeal, and the remainder paid out based on the outcome of the appeal, the question arises of how to charge or allocate the per-capita payments and individual Participation Award payments: should they be charged entirely against the amount paid out in damages for 1996-2007 hourly promotions, or should they be allocated pro-rata to the 1996-2007 hour promotions damages and the other categories of damages; and if the latter, in the event Lufkin wins its appeal on either or both issues, how would the amounts initially allocated to the other categories of damages then be recovered from the amounts already paid to class members based on 1996-2007 hourly promotions?

Because of the complications and uncertainties that inevitably arise from the division of the judgment into separate categories so that one category of damages can be provisionally calculated and paid out while Lufkin appeals from the award of the other categories of damages, Plaintiffs urge the Court to decline to divide the award and instead to enter an order specifying that it will enter a unitary judgment for a single amount. Should Lufkin appeal from that judgment, the parties and the Court can then proceed in light of the rules applicable to stays of judgment pending appeal, bond requirements, etc.[6]

Lufkin may, of course, also maintain its position that simple, not compound, interest should be awarded, and could even appeal to the Fifth Circuit on that point (although Plaintiffs' counsel have received no indication that Lufkin will do this). Plaintiffs' proposed Order is based on compound interest as ordered by the Court. If Lufkin does not accept the Court's ruling on this point (Order entered August 25, 2009, Dkt. 662), that position might also impact the form of the Court's ultimate judgment for interest. However, as with the issues of the 1994-1995 time

---

[6] Should Lufkin file such an appeal on monetary relief orders, the Court should not stay the injunctive relief portion of its judgment. Moreover, we do not understand Lufkin to intend to appeal from any aspect of the injunctive relief, nor to seek a stay of the injunction while other issues are pending on appeal.

period and salaried promotions, Plaintiffs' proposal does not try to anticipate complications that may not arise, or a decision to divide the award in ways that Plaintiffs consider impracticable and inadvisable; and in any event whatever changes the Court may deem necessary can be made before entry of a final judgment. All that the Court need do here is enter its Order setting out the terms that it intends to incorporate into that judgment.

Finally, we comment – although it is not a matter that the Court has required the parties to address here or needs to address at this stage - on how the monetary relief order will enter into entry of a final judgment on other issues in the case. We do so in order to assist the Court in planning schedules and procedures leading to entry of such a judgment. Given the Fifth Circuit's order of dismissal of the prior appeal from the Court's interim award of attorneys' fees as premature and the Court of Appeals' reasoning, Plaintiffs would urge the Court to delay entry of a final judgment until it is prepared to include all three forms of relief – an injunction, monetary relief, and (interim) attorneys' fees – in its judgment. As to the injunctive and monetary relief provisions, the Court has, as of this date, received all of the parties' submissions on those issues and will be in a position to rule on all remaining issues and combine all of its rulings into a final decree. As to attorneys' fees, Plaintiffs respectfully suggest that the Court might incorporate its previously-entered interim award of attorneys' fees and costs (Dkt. 621 and 622), which the Court of Appeals ruled was not an appealable order, into the final judgment, reserving any further award for time and expenses incurred since January 1, 2009 for later proceedings.

C.   **Participation Awards.**

As noted above, Lufkin takes the position that Plaintiffs' proposed Participation Awards for certain named plaintiffs and class representatives are not appropriate. Because the issue is contested and may be subject to appellate review, the Court's Order should cite the basis for whatever awards it may order; for that reason, Plaintiffs have included the legal reasons and authorities supporting the proposed Participation Awards in the Amended Proposed Order submitted with this Memorandum (at 7-9). The factual basis for the individual awards and the

9

total amount of the proposed awards is set forth in the Declaration of Timothy B. Garrigan, submitted herewith.  Since the reasons and authorities are fully set out in the Amended Proposed Order , we will not repeat them here but instead incorporate them by reference.

Dated:  October 2, 2009        Respectfully submitted,

By:   /S/ Morris J. Baller
Teresa Demchak, CA Bar No. 123989
tdemchak@gdblegal.com
Morris J. Baller, CA Bar No. 048928
mballer@gdblegal.com
Goldstein, Demchak, Baller, Borgen & Dardarian
300 Lakeside Drive, Suite 1000
Oakland, CA  94612-3534
(510) 763-9800

Timothy Garrigan, TX Bar No. 07703600
tim@sgclaw.org
Stuckey, Garrigan & Castetter Law Offices
2803 North Street
Nacogdoches, TX  75963-1902
(936) 560-6020

Attorneys for Plaintiffs

### CERTIFICATE OF SERVICE

I hereby certify that I have served all counsel of record in this case, including the following, with a true and correct copy of the foregoing by sending same via electronic filing to:

Douglas Hamel
Christopher V. Bacon
Vinson & Elkins
2806 First City Tower
1001 Fannin Street
Houston, TX  77002-6760

on this 2nd day of October, 2009.

  /S/
Morris J. Baller

10

97515-10